UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERMAN FREE STATE OF
BAVARIA, *et al.*,

       Plaintiffs,

v.

TOYOBO CO., LTD., *et al.*,

       Defendants.  /

Case No. 1:06-CV-407

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendants Toyobo Co., Ltd. and Toyobo America, Inc.'s Motions to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Motions have been fully and vigorously briefed and the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.   BACKGROUND**

This action was brought by Plaintiffs German Free State of Bavaria ("Bavaria") and German Free State of North Rhine-Westphalia ("NRW") (collectively "Plaintiffs") against Defendants Toyobo Co., Ltd. ("Toyobo Japan"), Toyobo America, Inc. ("Toyobo America"),[1] Mark Steven Pickett, and Thomas Edgar Bachner, Jr.[2] to recover damages arising out of the sale of defective bulletproof vests to Plaintiffs by Second Chance Body Armor, Inc. ("SCBA") and its wholly owned subsidiary Second Chance Body Armor GmbH ("SCBA Germany"). Plaintiffs allege thirteen different Counts against Defendants in their Amended Complaint including: innocent, negligent, and

---

[1] The Court notes Plaintiffs do not differentiate between Toyobo Japan and Toyobo America and refer throughout their pleadings to the Defendants collectively as "Toyobo." The Court finds this to be confusing and at times misleading and has differentiated where possible.

[2] Defendant Thomas Edgar Bachner, Jr. was improperly named in the Complaint as Thomas Edward Bachner, Jr.

intentional misrepresentation; conspiracy; aiding and abetting in misrepresentations; breach of fiduciary duties; aiding and abetting in the breach of fiduciary duties; violation of Racketeering Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1962; violations of the Michigan Consumer Protection Act; breach of warranties; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.; violations of Michigan's Uniform Commercial Code; and exemplary damages.  (Am. Compl. ¶¶ 105-48.)

Plaintiffs' action arises from the allegation that Toyobo Japan and Toyobo America conspired and colluded with SCBA, SCBA Germany, and their employees Mark Pickett and Thomas Bachner to intentionally or negligently misrepresent facts and induce Plaintiffs to purchase approximately 60,000 defective bulletproof vests from SCBA Germany.[3]  Toyobo Japan is a Japanese Company and Toyobo America is a subsidiary of Toyobo Japan and is a New York corporation.  (*Id*. ¶¶ 5-7.) Plaintiffs assert that beginning in May 1996, Toyobo Japan and Toyobo America began an informal partnership with SCBA to develop bulletproof vests which incorporated a synthetic PBO fiber ("Zylon").  (*Id*. ¶ 17.)

In 2001, Bavaria and NRW each made separate proposals for bids to supply lightweight bulletproof vests for their police forces.  (*Id*. ¶ 27.)  A material term of the Bavarian proposal was that the bulletproof vests have a useful life of at least 10 years; a material term in the NRW proposal was that the bulletproof vests have a useful life of at least 5 years.  (*Id*. ¶¶ 28-29.)  SCBA Germany, which Plaintiffs allege was an alter-ego of SCBA, was a bidder on each proposal.  (*Id*. ¶¶ 30-31.) After rounds of testing, Bavaria agreed to award the contract to SBCA Germany and another

---

[3]The Court has relied almost entirely on Plaintiffs' Amended Complaint for the facts in this section and focuses on those facts that relate to personal jurisdiction.

company, Mehler Vario Systems ("Mehler"). (*Id.* ¶ 35.) Mehler objected and requested more testing – which Mehler's vests failed. (*Id.* ¶¶ 36-38.) Mehler eventually withdrew its bid from consideration. (*Id.* ¶ 39.)

Sometime after July 5, 2001, Mehler was given a Toyobo document from one of its high performance fiber suppliers, Dutch State Mines ("DSM"). (*Id.* ¶¶ 41-44.) This document indicated that the use of PBO-fiber in bulletproof vests was not justified because accelerated aging tests showed Zylon lost approximately 20 percent of its strength in just over 50 days at 60 degrees Centigrade and 80% humidity and it lost nearly 40% of its strength after the same amount of time at 80 degrees Centigrade and 80% humidity. (*Id.* ¶¶ 42-43.) Toyobo concluded, in the document, that this loss of strength was a result of a process known as hydrolysis and, therefore, Toyobo was unable to guarantee a useful life of 10 years. (*Id.* ¶ 44.) DSM's document was sent to the Bavarian State Police ("BSP") and Toyobo. (*Id.* ¶¶ 49-50.) Toyobo then forwarded the information to SCBA and Defendants Pickett and Bachner. (*Id.* ¶ 50.) On July 9, 2001, representatives of the BSP contacted, via telephone, Defendants Pickett and Bachner and other SBCA employees in regards to their concern over the fiber and the vests. (*Id.* ¶¶ 51-52.) The representatives for BSP were told that the incorporation of Gore-Tex and the way the fabric was woven solved the hydrolysis issue and the Zylon was suitable for their bulletproof vests. (*Id.* ¶ 53.)

SCBA held a "Toyobo and Second Chance Zylon Crisis Management Meeting" in Traverse City, Michigan on July 12, 2001, in regards to Bavaria's concerns over the suitability of Zylon. (*Id.* ¶ 55 and Dkt. No. 82, Ex. 12 at 8.) Defendants Pickett and Bachner were in attendance as were Toyobo Japan employees Masakazu Saito, Yoshinari Ohira, and Tadao Kuroki. (Am. Compl. ¶ 56.) Defendant Bachner and SCBA urged Toyobo Japan to send a letter directly to Bavaria supporting

the use of Zylon and requested a 10 year guarantee of Zylon from Toyobo Japan.  (*Id*. ¶¶ 57-58; Dkt. No. 73, Ex. 2(D) (minutes from meeting) & Dkt. No. 82, Ex. 13 (suggestions to Toyobo Japan for letter).)  Also discussed was "Toyobo's liability position."  (Dkt. No. 73, Ex. 2(D).)  Toyobo Japan afterwards sent a letter, from Japan to Germany, and signed by Saito, stating it considered the test results from DSM a unique characteristic of that particular product, not of Zylon.  (Am. Compl. ¶ 61; *see also* Dkt. No. 72, Exs. 2(A) & 2(D).)

On or about July 26, 2001, Bavaria awarded SCBA Germany the contract for 27,315 bulletproof vests.  (Am. Compl. ¶ 83.)  On September 6, 2001, Saito, Ohira and Kuroki traveled again to Michigan to discuss testing of Zylon.  (Dkt. No. 82 at 15; *see also Id.*, Ex. 6 at 183:21-184:25.)  SCBA also sent vests from Michigan to Toyobo Japan for testing in August 2001.  (*Id*. at 14-15; *see also Id.*, Ex. 6 at 33:11-46:20.)  On or about October 30, 2001, NRW awarded SCBA Germany a contract for the purchase of up to 33,600 bulletproof vests.  (Am. Compl. ¶ 84.)  In December 2001, SCBA Germany's representative, Armin Wagner, met with Kuroki in Germany to discuss again the viability of Zylon.  (*Id*. ¶ 89; *see also* Dkt. No. 82 at 18.)  In December 2001, Defendant Bachner, others from SCBA, and Toyobo met in Los Angeles, California for another "Crisis Meeting."  (Am. Compl. ¶ 96 and Dkt. No. 82, Ex. 12.)

Plaintiffs allege that from July 2001 until at least October 3, 2003, SCBA, SCBA Germany, Toyobo Japan and Toyobo America were working together (almost exclusively through mail, email, and telephone communications) to keep relevant information about the strength and suitability of Zylon from Plaintiffs.  (Am. Compl. ¶ 18.)  In late 2003, NRW received its last shipment of bulletproof vests from SCBA Germany and in the spring of 2004, Bavaria received its last shipment

4

of the same.  (*Id*. ¶¶ 102-03.)  In October 2004, SCBA declared bankruptcy and SCBA Germany initiated insolvency proceedings shortly thereafter.  (*Id*. ¶ 104.)

## II.   LEGAL STANDARDS

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  Plaintiffs bear the burden of establishing that jurisdiction exists.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  Where a court, as here, does not conduct an evidentiary hearing, Plaintiffs must only make a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002).  Further, the Court will construe the facts in a light most favorable to the nonmoving party and will not consider facts proffered by Defendants which conflict with those offered by Plaintiffs.  *Id*. (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendants due process.'"  *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  "Where the state long-arm statute extends to the limits of the due process clause, the two inquires are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."  *Id*.  This is true in Michigan where Michigan's Long-Arm statute, Mich. Comp. Law § 600.705, "extends to the limits imposed by federal constitutional requirements."  *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992).  "In broad terms the

assertion of personal jurisdiction satisfies due process if 'the defendant purposefully avails itself of the privilege of conducting activities within the forum State.'" *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1994) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1985). Therefore, Plaintiffs must "establish with reasonable particularity sufficient 'minimum contacts' with Michigan such that the exercise of jurisdiction over [Defendants] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen*, 282 F.3d at 890 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

"In analyzing the due process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Conti v. Pneumatic Prod. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). "In the case of general jurisdiction, a defendants's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citations omitted); *see also* MICH. COMP. LAW § 600.711. In a specific jurisdiction case, "a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

### III.  ANALYSIS

A.  Toyobo Japan and Toyobo America

Plaintiffs allege in their Amended Complaint and Response that Toyobo America is an alter ego of Toyobo Japan. According to a 2006 Byzantine organizational chart, Toyobo Japan is a part of Toyobo Group, which includes 64 companies. (Dkt. No. 82, Ex. 8.) Toyobo America, a wholly owned subsidiary, does not appear on the organizational chart, as not all subsidiaries are listed. (*Id*.)

Plaintiffs address both companies as one and impute Toyobo Japan's actions to Toyobo America throughout their Response. However, it is clear this is an assumption and conclusion and it is not supported by proofs offered by Plaintiffs. To wit: in Michigan, to pierce the corporate veil or find that one company is the 'alter ego' of another, the corporate entity must be a mere instrumentality of another entity or individual; the corporate entity must be used to commit a fraud or wrong; and there must be an unjust loss or injury to Plaintiffs. *See Daymon v. Fuhrman*, 474 Mich. 920 (2005).

Plaintiffs have failed to allege any of these factors or reference any case law to support a piercing of the corporate veil; their analysis of the issue is merely conclusory. Plaintiffs only assert in their factual statement that Toyobo America is an alter ego of Toyobo Japan and rely on Defendant Bachner's affidavit from a different case in which he states that Kuroki, an employee of Toyobo Japan, appeared or represented himself to be an employee of Toyobo America as well. (Dkt. No. 82, Ex. 1 ¶ 4.) Plaintiffs also rely on the fact that the companies share some employees, "or at least that is what Kuroki wanted people to believe." (Dkt. No. 82 at 6.) Further, Plaintiffs' assertion that because Toyobo America may have served an important function for Toyobo Japan does not translate into a basis to find the corporations so linked that alter-ego status is achieved. Therefore this theory of alter-ego is unsubstantiated on the record and the Court will evaluate the two entities separately.

B.    General Jurisdiction

As stated previously, general jurisdiction exists when a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the forum state may exercise personal jurisdiction over defendant, even if the action is not related to defendant's contacts with the state. *Third Nat'l Bank*, 882 F.2d at 1089 (citations omitted). Further, the Court's exercise of personal

jurisdiction must not offend 'traditional notions of fair play and substantial justice.' *Neogen*, 282 F.3d at 890 (quoting *Int'l Shoe*, 326 U.S. at 316).

      1.      Toyobo Japan

Toyobo Japan asserts it lacks any contact with Michigan that could be construed as "continuous and systematic." To this end they offer a list of all the contacts Toyobo Japan does *not* have with the forum:

> (1) it is not qualified, registered, authorized, licensed, or chartered to conduct business in Michigan; (2) it has no office in Michigan; (3) it does not maintain or possess a bank account in Michigan; (4) it does not possess or maintain a telephone listing or number in Michigan; (5) it does not pay any taxes in Michigan, nor does it pay franchise fees in Michigan; (6) it has no post office box or mailing address in Michigan; (7) it does not lease, own, nor have any interest in real or personal property in Michigan; (8) it has no contracts to insure nor does it finance any person or property in Michigan; (9) it has no agents, servants, suppliers, vendors, sales representatives, distributors, employees, brokers, or wholesalers living, working, or transacting business of any nature in Michigan on its behalf; (10) it conducts no manufacturing activity in Michigan; and (11) all documents relating to its formal business, including financial statements and tax returns, are located outside of Michigan.

(Dkt. No. 74 at 8-9.) Plaintiffs do not offer any evidence which contradicts these assertions. Plaintiffs offer, however, a host of emails, correspondence, and facsimiles and assert employees of Toyobo Japan visited Michigan on at least two occasions in the relevant time period and that Kuroki visited Michigan on many other occasions regarding its dealings with SCBA. (*See e.g.* Dkt. No. 82, Ex. 1 at 27, 31, 43, 45, 50 and Ex. 18.)

Toyobo Japan argues its position is similar to the defendant in the Sixth Circuit Court of Appeals decision *Conti v. Pneumatic Products Corp*, 977 F.2d 978 (6th Cir. 1992). In *Conti*, the Sixth Circuit analyzed whether a defendant, Pneumatic, had enough contact with the forum state to give rise to general jurisdiction. *Id*. The Sixth Circuit held general jurisdiction did not exist where

8

a company was not licensed in the forum state, did not maintain an office or employees, and did not own any property. *Id.* at 981. Further, the Sixth Circuit considered defendant's sale of its products in the forum through two distributors, and defendant's occasional visit and telephone call to the distributors for technical support also did not render defendant's contacts "continuous and systematic." *Id*.

Toyobo Japan further relies on *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408 (1984) to support its argument it did not engage in conduct that was systematic or continuous in Michigan. In *Helicopteros*, the Supreme Court identified four contacts between a corporation, Helicopteros, and the forum state, Texas; a visit from a chief executive officer for a contract negotiation, accepting checks from a Huston bank, "purchasing helicopters, equipment and training services from Bell Helicopter [in Texas]," and sending personnel to facilities in Fort Worth for training. *Id*. at 416. These four contacts were held to be insufficient to subject the corporation to personal jurisdiction of the state. *Id.* at 418.

The Court finds these case are easily differentiated from the present situation. Facially, Toyobo Japan appears similar to Pneumatic in *Conti*, where it does not directly supply end users with any products and operates its sales at a distance through weavers, component manufacturers. However, unlike the distant relationship between manufacturer and distributer evidenced in *Conti*, and the short-list of contacts in *Helicopteros,* Toyobo Japan enjoyed a seemingly close and different relationship with SCBA.[4] This relationship included, as evidenced by the emails and facsimiles dating from 1996 (Dkt. No. 82, Ex. 1), the cultivation of an end-user customer (*Id*.); synergy and

---

[4]The Court notes that Toyobo Japan first appears to assert it did not sell Zylon directly to SCBA (Dkt. No. 74 at 5-6), and then goes on to apparently concede it did sell Zylon to SCBA (Dkt. No. 96 at 6-7).

9

input with SCBA regarding market strategy (Dkt. No. 74, Ex. 2(D)); the execution of at least two confidentiality agreements (*See Id*. at 33-36, Confidentiality agreement sent by facsimile from Japan to SCBA in Michigan on August 7, 1996; *see also* Dkt. No. 82, Ex. 18 (referencing second confidentiality agreement)); visiting Michigan on multiple occasions for the purpose of continuing a business relationship with SCBA (Dkt. No. 82, Ex. 1); and coordination of testing of the vests made by SCBA. (Dkt. No. 82, Ex. 6 at 33:11-46:20.) Further, although Toyobo Japan construes its visits to Michigan as "promotional," it is clear from Plaintiffs proofs, at least two of these meetings were not promotional but rather strategy pow-wows and informational meetings regarding the testing of Zylon. This relationship cannot be described as anything other than an on-going, continuous, systematic business relationship.

The present case is more similar to *Michigan Nat'l Bank v. Quality Dinette, Inc*., 888 F.2d 462 (1989), in which the Sixth Circuit found general jurisdiction existed over a defendant although the defendant did not own property in Michigan, had no employees, bank accounts, or telephone listings in Michigan, had not solicited sales by telephone in Michigan, had no participated in trade shows or promotional events in Michigan and had not paid taxes in Michigan or collected sales tax in Michigan. *Id*. at 465. The Sixth Circuit held that where the defendant had an independent sales representative in the state and conducted mail order solicitations of Michigan business and also had at least one sale in Michigan every month for a year, defendant had conducted a continuous and systematic part of their general business in Michigan. *Id*. at 466. In the present case, the facts supporting general jurisdiction are even stronger. Toyobo Japan has had more frequent and longer

standing business contacts in Michigan, and maintained frequent contact with a Michigan business.[5] Toyobo Japan visited often and was involved in the development of SCBA's end product and was also involved in later public relations regarding that product.

In *Asahi Metal Ind. Co. v. Superior Court of California*, 480 U.S. 102 (1987), Justice O'Connor, writing for the plurality, held "[t]he substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action *of the defendant purposefully directed toward the forum State*." *Id*. at 112 (internal citations omitted) (emphasis in original). In the present case, Toyobo Japan's contacts with Michigan were purposefully directed at Michigan. Moreover, Toyobo Japan's contacts with Michigan were not that of a distant manufacturer as they included being involved in the development and later testing of the end-product which incorporated Zylon. One email in particular illustrates Toyobo Japan's direct business relationship with SCBA and Michigan. In the email to SBCA, dated August 3, 2000, Toyobo Japan states

> [W]e must switch the rebate program to the direct operation between Second Chance and Toyobo before the weavers starts selling to other body armor makers. (Currently, We sell to Itochu with lower price and Itochu sells to the weavers with normal price and reserves money for Second Chance. Of course, we continue business through Itochu. Only rebate shall be changed.)
>
> Soon, I will arrange an appropriate contract between Second Chance and Toyobo like you did with Itochu.

---

[5] Plaintiffs have not offered direct evidence as to the dollar amount of Zylon sold to SCBA in Michigan; however, Plaintiffs offer a variety of other sources from which one can deduce the dollar amount was at least more than 10 million dollars at one time. (*See* Dkt. No. 82 at 5 (relying on deposition testimony of Kuroki; sales of Zylon in the United States for 2004; and SCBA's estimated market share of the United States' Zylon market (70%).)

(Dkt. No. 82, Ex. 1 at 52.)  Indeed, the continuous and systematic relationship between Toyobo Japan and SCBA was very dissimilar from one in which its product merely came to Michigan in the stream of commerce with no foreseeability or foresight. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (holding the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

Therefore, the Court finds that general jurisdiction exists over Toyobo Japan where its contacts with the forum state rise to the level of "systematic and continuous" and applying jurisdiction comports with traditional notions of fair play and justice.

2.      Toyobo America

Unlike Toyobo Japan, Plaintiffs have very little to establish any systematic and continuous conduct on the part of Toyobo America, apart from its connection to its parent company, that supports a finding of general jurisdiction.  Unlike Toyobo Japan, Toyobo America has never manufactured, designed, packaged, sold or distributed Zylon in Michigan, it has never contracted to provide Zylon in Michigan, has never solicited the sale of Zylon in Michigan, nor directly marketed Zylon in Michigan, and has never sold Zylon to SCBA or any subsidiary. (Dkt. No. 73 at 6 & Ex. 1) Further, like Toyobo Japan, Toyobo America is not incorporated in Michigan, has no office here, does not maintain a bank account, telephone number, or mailing address, does not pay taxes, own property, and does not derive substantial revenue from goods used or consumed in Michigan and all of its financial statements and tax returns are outside of Michigan. (*Id*.)  Toyobo America's only

physical presence in Michigan has been visits regarding the sale of automotive cabin filters to an Indiana company and to attend trade shows. (*Id.* at 6-7.)

Where Toyobo Japan failed in convincing this Court of the similarity of its contacts to the contacts in *Conti*, Toyobo America succeeds. *Conti*, 977 F.2d at 981. These contacts have not been controverted by Plaintiffs proofs and are too attenuated to be construed as systematic or continuous. Therefore, Plaintiffs have failed to show any connection between Toyobo America as separate from Toyobo Japan that would establish general jurisdiction.

C.  Specific Jurisdiction -Toyobo America

The Sixth Circuit has employed a three-part test to determine whether personal jurisdiction is appropriate: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "Each [of these] criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

Plaintiffs' arguments substantially fail to address whether Toyobo America has purposefully availed itself of the benefits and protections of Michigan. "Purposeful availment ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Conti*, 977 F.2d at 982. As indicated by the previously listed contacts with the forum state, Toyobo America

has had little or no contact with Michigan. Further, the emails between Toyobo and SCBA, establishing and furthering a business relationship, were authored exclusively by Toyobo Japan's employees or agents, and no Toyobo America employees attended the meetings in which Plaintiffs allege the conspiracy was hatched. It is true that a few emails from Kuroki to SCBA in the late 1990's included Toyobo America's letterhead. (Dkt. No. 82, Ex. 1 at 23-29.) However, Plaintiffs have failed to show or argue that these emails in the late 1990's connect to any Toyobo involvement in a conspiracy alleged to have been conspired in 2001. Further, Plaintiffs fail to present any evidence that Toyobo America had any connection with selling Zylon in the state of Michigan. Therefore, Plaintiffs have failed to present a *prima facie* case that supports purposeful availment of the benefits or protections of Michigan. As a result, the Court cannot exercise personal jurisdiction over Toyobo America.

D.   Issue Preclusion

Plaintiffs argue Toyobo America cannot contest personal jurisdiction because a Michigan Court has already determined the issue. Issue preclusion, or collateral estoppel, applies when "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; the same parties must have had a full and fair opportunity to litigate the issue; and there must be mutuality of estoppel."[6] *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 684-85 (2004) (citations omitted). In support of the application of issue preclusion, Plaintiffs submit an Order of the Antrim Circuit Court in Michigan from *Nat'l Assoc. of Police Orgs., Inc., et al. v. Second Chance Body Armor, Inc., et al.*, Case No. 04-8018, which denied Toyobo Japan and Toyobo

---

[6]Mutuality is not required when collateral estoppel is being used defensively as it would in this instance. *Id.* at 850-91.

America's Motion to Dismiss pursuant to MCR 2.116(C)(1) (lack of personal jurisdiction). (*See* Dkt. No. 82, Ex. 2.) However, this Order denied the Motion *without prejudice and pending discovery* on the issue. (*Id*.) As the State court's order is not a final one and was given provisionally prior to discovery, it is not a final judgment and issue preclusion is not appropriate.[7]

## IV.   CONCLUSION

Therefore, the Court will deny Toyobo Japan's Motion to Dismiss for Lack of Personal Jurisdiction as Plaintiffs have made the requisite *prima facie* showing. However, the Court will grant Toyobo America's Motion to Dismiss for Lack of Personal Jurisdiction where Plaintiffs have failed to do the same.


Dated in Kalamazoo, MI:                                         /s/Richard Alan Enslen
March 19, 2007                                                       Richard Alan Enslen
                                                                              Senior United States District Judge

---

[7]Plaintiffs also argue briefly that personal jurisdiction because of "conspiracy theory of jurisdiction" applies. For the reasons that Plaintiffs failed to show any proof that an agent or employee from Toyobo America attended any meeting or engaged in communication during the pertinent time frame and involving the alleged conspiracy, the Court finds this argument without merit as it applies to Toyobo America.