UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERMAN FREE STATE OF
BAVARIA, *et al.*,                                              Case No. 1:06-CV-407

              Plaintiffs,                          Hon. Richard Alan Enslen

     v.

TOYOBO CO., LTD, *et al.*,
                             **OPINION**
              Defendants.         /

      This matter is before the Court on Defendants Toyobo Co., Ltd. and Toyobo America, Inc.'s

Motion to Dismiss based on *Forum non Conveniens*. The Motion has been fully briefed and the

Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.     BACKGROUND**

      This action was brought by Plaintiffs German Free State of Bavaria ("Bavaria") and German

Free State of North Rhine-Westphalia ("NRW") (collectively "Plaintiffs") against Defendants

Toyobo Co., Ltd. ("Toyobo Japan"), Toyobo America, Inc. ("Toyobo America"), Mark Steven

Pickett, and Thomas Edgar Bachner, Jr.[1] to recover damages arising out of the sale of defective

bulletproof vests to Plaintiffs by Second Chance Body Armor, Inc. ("SCBA") and its wholly owned

subsidiary Second Chance Body Armor GmbH ("SCBA Germany"). Plaintiffs allege thirteen

different Counts against Defendants in their Amended Complaint including: innocent, negligent, and

intentional misrepresentation; conspiracy; aiding and abetting in misrepresentations; breach of

fiduciary duties; aiding and abetting in the breach of fiduciary duties; violation of Racketeering

---

[1] Defendant Thomas Edgar Bachner, Jr. was improperly named in the Complaint as
Thomas Edward Bachner, Jr.

Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1962; violations of the Michigan

Consumer Protection Act; breach of warranties; violation of the Magnuson-Moss Warranty Act, 15

U.S.C. §§ 2301 *et seq*.; violations of Michigan's Uniform Commercial Code; and exemplary

damages.  (Am. Compl.  ¶¶ 105-48.)

Plaintiffs' action arises from the allegation that Toyobo Japan and Toyobo America conspired

and colluded with SCBA, SCBA Germany, and their employees Mark Pickett and Thomas Bachner

to intentionally or negligently misrepresent facts and induce Plaintiffs to purchase approximately

60,000 defective bulletproof vests from SCBA Germany.[2]  Toyobo Japan is a Japanese Company and

Toyobo America is a subsidiary of Toyobo Japan and is a New York corporation.  (*Id*. ¶¶ 5-7.)

Defendant Bachner, a resident of Michigan, was an officer and director of SCBA.  (*Id*. ¶ 8.)

Defendant Pickett, a resident of Michigan, served as director of SCBA Germany and was also an

employee of SCBA.  (*Id*. ¶ 9.)  Plaintiffs assert that beginning in May 1996, Toyobo Japan and

Toyobo America began an informal partnership with SCBA to develop defective bulletproof vests

which incorporated a synthetic PBO fiber ("Zylon").  (*Id*. ¶ 17.)

The Court has previously determined that it lacks personal jurisdiction over Toyobo America

and that Defendant Mark Pickett's service of process in this action was insufficient.  For these

reasons, Toyobo America and Mark Pickett have been dismissed as Defendants in this action.

## II.    LEGAL STANDARD

The doctrine of *forum non conveniens* is a doctrine of inherent authority and provides that

a court may dismiss a pending suit in deference to proceedings in a foreign jurisdiction for reasons

---

[2]The Court incorporates by reference the fact section from its previous Opinion regarding Defendants Toyobo Japan and Toyobo America's Motions to Dismiss for Lack of Personal Jurisdiction. (*See* Op., Dkt. No. _____ at 1-6.)

of convenience, judicial economy and justice.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 507-08 (1947).  As this Court has previously stated, the doctrine is to be used guardedly, as it conflicts with the common law doctrine of *judex tenetur impertiri judicium suum*–a court with jurisdiction is bound to decide matters within that jurisdiction.  *See Higgins v. SPX Corp.*, 2006 WL 1008677 at *4 (W.D. Mich. Apr. 18, 2006); *see also England v. La. Med. Exam'rs,* 375 U.S. 411, 415 (1964); *Hyde v. Stone*, 61 U.S. (20 How.) 170, 175 (1857); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821); *Mostyn v. Fabrigas*, 98 Eng. Rep. 1021, 1027 (K.B. 1774) (on appeal from Court of Common Pleas) (decision of Lord Mansfield); *Scottish Ins. Corp. Ltd. v. Wilsons & Clyde Coal Co. Ltd.*, 1949 S.L.T. 230, 239 (H.L.) (on appeal from 1st Div.) (decision of Lord Norman); *contra Societe du Gaz de Paris v. Societe Anonyme de Navigation "Les Armateurs Francais" Paris*, 1926 S.L.T. 33, 36-38 (H.L. 1925) (on appeal from 2nd Div.) (decision of Lord Sumner).  *But also see Lubbe & Others v. Cape Plc.,* [2000] 2 Lloyd's Rep. 383, 394-95 (H.L.)  (on multiple appeals) (decision of Lord Bingham) (reversing grant of stay on *forum non conveniens* grounds where stay would "lead to denial of justice").

In 1947, the Supreme Court decided *Gulf Oil Corp. v. Gilbert* and its companion case, *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947), which permitted dismissal on the basis of *forum non conveniens*.  The Supreme Court found that although plaintiff's choice of forum should rarely be disturbed, "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant . . . or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (internal citations omitted).  To guide a court's discretion

in the determination of whether a dismissal under *forum non conveniens* is appropriate, the Supreme

Court set forth a balancing test of "'private interest factors,' affecting the convenience of the litigants

and 'public interest factors' affecting the convenience of the forum." *Id*.

### III.   ANALYSIS

A.   Initial Inquiry

The first initial inquiry in a motion to dismiss for *forum non conveniens* is whether an

adequate and alternative forum exists. *See Piper Aircraft*, 454 U.S. at 255 n.22. The Supreme Court

has held that an alternative forum exists where:

> the defendant is amenable to process in the other jurisdiction . . . however, where the
> remedy offered by the other forum is clearly unsatisfactory, the other forum may not
> be an adequate alternative, and the initial requirement may not be satisfied. Thus, for
> example dismissal would not be appropriate where the alternative forum does not
> permit litigation of the subject matter of the dispute.

*Id*. (citations omitted). In the present case it is undisputed by the parties that Germany is an adequate

forum for some of the claims against Toyobo Japan. (*See* Dkt. No. 84 at 7, stating "Plaintiffs do not

dispute that German law offers them a remedy – at least on some of their claims.") Plaintiffs argue

that German courts would lack jurisdiction over Defendant Bachner, a Michigan resident, and would

also lack jurisdiction over the federal claims asserted against Toyobo Japan because actions

supporting the claims were committed in Michigan. However, an alternative forum exists even when

a plaintiff may not be able to proceed on a particular legal theory, or the potential damages may be

smaller. *Piper Aircraft*, 454 U.S. at 241-42 (citation omitted). Therefore, the Court finds an

adequate forum exists in Germany for the claims against one Defendant, Toyobo Japan. However,

it is clear that such an alternative forum does not exist for the claims against Defendant Bachner.

Accordingly, if the Court determined dismissal under *forum non conveniens* was appropriate, a

splitting of the action would be necessary: dismissing the action against Toyobo Japan and retaining

the action against Defendant Bachner.

In determining whether a dismissal under *forum non conveniens* is appropriate, the Court

must also ascertain what level of deference is afforded to Plaintiffs' choice of forum.  The Supreme

Court recently stated:

> A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in
> opposing the plaintiff's chosen forum.  When the plaintiff's choice is not its home
> forum, however, the presumption in the plaintiff's favor "applies with less force," for
> the assumption that the chosen forum is appropriate is in such cases "less
> reasonable."

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. ___ (2007) (quoting *Piper*

*Aircraft*, 454 U.S. at 255-56.)  In the present action Plaintiffs, two German states, have brought their

action in Michigan, which is certainly not Plaintiffs home forum.  Accordingly, the Court finds

Plaintiffs' choice of forum is entitled to less deference.

B.      Private Interest Factors

The Court must next evaluate the private and public interest factors.  The private interest

factors weighed in *Gilbert* include the "relative ease of access to sources of proof; availability of

compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing

witnesses; possibility of view of premises, if view would be appropriate to the action; and all other

practical problems that make trial easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508.

First, inconvenience of the parties does not appear to be at issue in this case.  "It appears

inevitable that one of the parties will be inconvenience[d] by having to proceed in a court in a foreign

jurisdiction." *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106-07 (6th Cir. 1987).  Here, as in

*Stewart*, both parties appear to be willing to pay that cost where the German states want to proceed

in Michigan and the Japanese Corporation wants to go to Germany; therefore the costs of travel or the inconvenience are non-issues. *Id*.

The ease of access to sources of proof (including witnesses) weighs in favor of retention of the case. It is true, as Plaintiffs point out, that many documents are in the United States and have likely been translated in connection with other on-going SCBA litigation. However, there are other relevant documents and evidence, as Toyobo indicates in its Motion which are located in Germany. These include most importantly the documents in the possession of SCBA Germany and its employee Armin Wagner regarding the bidding process, the media campaign, Toyobo's involvement, and retainment of a public relations agency. Toyobo also indicates that the testing of the vests was done by German laboratories and the vests themselves are in fact in Germany.

In regards to witnesses, both Plaintiffs and Toyobo have similarly long lists of witnesses each claims it needs and will not be available to procure but for the case proceeding in Michigan or Germany, respectively. Toyobo argues if the trial were to proceed in Germany, Plaintiffs could utilize 28 U.S.C. § 1782(a) to obtain discovery and depositions from Michigan witnesses.[3] However, this statute does not completely alleviate the fact that Germany has no pretrial discovery and also limits other access to sources of proof including depositions and witnesses. *See Gen. Motors Corp. v. Ignacio Lopez*, 948 F. Supp. 656 (E.D. Mich. 1996) (finding same). These restrictions, in conjunction with availability of possibly relevant evidence in this district, tip the private interest factors in favor of Michigan. This finding, however, does not end the inquiry.

---

[3]Section 1782(a) provides that a federal district court may order a person residing or found in the district to give testimony or produce documents for use in a proceeding in a foreign or international tribunal upon the application of any interested person. 28 U.S.C. § 1782(a). *See also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (examining statute and its reach and application.)

C.      Public Interest Factors

The pertinent public interest factors include the "'local interest in having localized controversies decided at home'. . . the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 (citing *Gilbert*, 330 U.S. at 509). In the instant case, the German interest in this action is very strong. This action involves Plaintiffs who are German states and an injury which occurred in Germany. Every claim in the action is related to contracts Plaintiffs negotiated in Germany with a German company for the purchase of bulletproof vests. This is not to say there is no Michigan connection as well – the alleged conspiracy occurred or was planned from Michigan by Michigan residents. Also, if the RICO claim is true, those acts of "racketeering activity" likely took place in Michigan. (Am. Compl. ¶¶ 130-32, Plaintiffs do not specify what those acts were.) However, the Court finds these Michigan connections do not rise to a "local interest." Although Michigan may have an interest in the claims which involve torts occurring in Michigan, the majority of the torts allegedly occurred entirely in Germany. The alleged misrepresentations were made and relied on in Germany and the injury was sustained in Germany to German states. Further, the letter in which Plaintiffs wholly rely upon establishing the misrepresentation and a duty on the part of Toyobo, was sent from Japan to Germany.

Although this case does not involve a highly regulated industry such as aviation or drugs, there are similarities between the present action and *Piper Aircraft* and *Dowling v. Richardson-Merrell Inc.*, 727 F.2d 608 (6th Cir. 1984), where the Sixth Circuit found that the place of the injury has a greater interest in trying the case. In the present action, Plaintiffs allege Toyobo conspired to keep adverse test results from Plaintiffs, two German states, indicating their PBO-fiber, Zylon,

degraded to such a degree that it rendered the bulletproof vests unsuitable for the safety of the police forces who were to wear them.  Toyobo kept this knowledge from Plaintiffs to induce Plaintiffs to purchase the vests.  The Sixth Circuit determined in *Dowling*, "this interest is highlighted in the present case by the plaintiff's charge that the defendant concealed adverse test results from the national health authorities in Great Britain."  *Dowling*, 727 F.2d at 616.  As in the present case, Plaintiffs are alleging misrepresentations and conspiracy to keep test results from German states. The Court finds that the industries of body armor "may not be as inherently threatening to public safety as aviation and drugs" or as regulated an industry, but such an industry does implicate the safety of police forces and in turn the public safety.  *Penwest Dev. Corp. Ltd. v. Dow Chemical Co.*, 667 F. Supp. 436, 440-41 (E.D. Mich 1987) (applying this analysis to the building industry). Accordingly, the place of the injury should be given a greater interest.  *Id.*

The Court also finds that it would be an undue burden for a Michigan jury to try the case in this district for the reasons previously detailed.  There is not a substantial or overriding factual connection to Michigan and Germany has such a connection.  Further, Plaintiffs unsupported assertion that the Court could achieve efficiency by withdrawing a reference to the Bankruptcy proceedings in a different case, brought originally in 2004, and combining them in this Court, resulting in this Court achieving a less congested docket and also perhaps somehow result in unnamed Michigan creditors receiving more money from SCBA, who is not a party to this action, is too attenuated an argument for the Court to address.  The Court also notes on the subject of docket congestion that this District is in fact in a "judicial crisis" as it has been awaiting the appointment of three federal judges for quite some time with no indication that such appointments will be made any time in the near future.

The last public interest factor to be weighed is the applicability of foreign law.  In *Piper Aircraft*, the Supreme Court found that public interest facts favor a dismissal where a court would be required to "untangle problems in conflict of laws and law foreign to itself."  454 U.S. at 251.  In a federal question case, choice of law principles are derived from federal common law.  *Med. Mut. v. DeSoto*, 245 F.3d 561, (6th Cir. 2001) (applying federal common law to an ERISA action); *see also Enter. Group Planning v. Falba*, 1995 WL 764117 at *2 (6th Cir. Dec. 27, 1995) (unpublished decision); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 120-21 (2nd Dir. 1984); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2nd Cir. 1980).[4]  Where the Court has subject matter jurisdiction based on federal question, the Court exercises supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(a) (stating that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.")

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Diamond Computer Sys., Inc. v. SBC Comm., Inc.*, 424 F. Supp. 2d 970, 978 (E.D. Mich. 2006) (quoting *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999)); *see also Erie*

---

[4]This Court has determined it has proper subject matter jurisdiction over this action based on original jurisdiction or federal question jurisdiction.  *See* 28 U.S.C. § 1331.  Subject matter cannot be based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(4), as Defendant Toyobo and Plaintiffs share foreign citizenship.  *See Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 580 n.2 (1999); *see also Corporacion Venezolana*, 629 F.2d at 790.

*R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding the court must apply the law of the forum's highest state court in diversity jurisdiction cases.)  "When deciding matters of supplemental jurisdiction, a federal court must apply the substantive law of the forum state in which it sits, including the forum state's choice-of-law rules." *Id*. at 979 (quoting *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998)).

In *Penwest*, a district court found that despite an alleged RICO violation, where the state law claims indicated that foreign law would be applied, a dismissal on *forum non conveniens* was appropriate.  *Penwest*, 667 F. Supp. at 441.  In the present action, Toyobo has already moved for German law to apply to the tort and contract claims alleged.  (*See* Dkt. No. 70.)  Further, in contradiction of Plaintiffs arguments that German law should not be applied to their claims (in this Motion and also the Motion to Apply German law), Plaintiffs assert in *their own pleadings* that German law defines the alleged duties of Toyobo and the sales at issue.  (See Dkt. No. 81 at 13, "defendants undertook mandate relationships with plaintiffs and owed plaintiffs fiduciary duties under German law" and Dkt. No. 81 at 17, "Toyobo has not even tried to make a showing that German law does not apply to the sales.")  It is clear from a cursory analysis that this Court will be faced with an unavoidable task of "untangling problems in conflict of laws and law foreign to itself" as contemplated by the Supreme Court in *Piper Aircraft*.  454 U.S. at 251.

Applying Michigan's choice of law rules, it is clear that Michigan courts employ a two-step analysis in determining "whether a rational reason to displace Michigan law exists." *Sutherland v. Kennington Truck Serv.*, 454 Mich. 274, 286 (1997).  The first step a court must take is to determine if any foreign state has an interest in having its law applied.  *Id*.  If no such interest exists, there is the presumption that Michigan law will apply.  *Id*.  If, however, a foreign state does have an interest,

then the court "must determine if Michigan's interests mandate that Michigan law be applied, despite

the foreign interests."  *Id*. (*citing Olmstead v. Anderson*, 428 Mich. 1, 24, 29-30 (1987)).

The Court must state the obvious: Plaintiffs in the action are not foreign companies, or

foreign citizens but rather they are foreign *states*.  Therefore, at the outset there is a clear indication

that the Federal Republic of Germany would have an interest in applying its own laws to protect the

interests of its own states.  Plaintiffs have also not advanced an argument that German law would

not protect the interests of its own states.  Also, it appears that Germany would apply German laws

to this action pursuant to its own choice of law rules.[5]  Further, in *Olmstead*, the Michigan Supreme

Court concluded that the "law of the place of the wrong is no longer of great or particular

significance."  *Penwest*, 667 F. Supp. at 442 (citing *Olmstead*, 428 Mich. at 24.)  "The place of the

wrong will never be dispositive in a given case, but it remains a factor to be considered in weighing

---

[5]German choice of law rules are codified in the Introductory Code to the Civil Code and Article 40 governs tort claims. (Grauke Dec. ¶¶ 9-11.)  Under Article 40, the law applied is either (1) the law of the country in which defendant committed the tort, or (2) at the election of Plaintiff, the law of the country in which the harm from the tort was felt. (Grauke Dec. ¶¶ 9, 11); *see ALSO* PETER HAY, *From Rule-Orientation to "Approach" in German Conflicts Law the Effect of the 1986 and 1999 Codifications*, 47 AM. J. COMP. L. 633, 638 (1999) ("The basic provision is simple enough.  In the absence of a choice by the parties . . . the law of the place of the tort – now defined as the place of acting – applies.").  Application of German law in a tort case may also be triggered if, overall, the case has the closest connection to Germany.  (*Id*. ¶ 10; citing to Article 41.)  Here, because Plaintiffs resist the application of German law, it is unlikely Plaintiffs would elect to have German law (the law of the country in which the harm from the tort was felt) apply as allowed under Article 40.  However, the torts alleged all arise from the common allegation that Defendants, Toyobo and Thomas Edgar Bachner, Jr., conspired and purposefully misrepresented certain facts that induced Plaintiffs to enter into contracts to purchase bulletproof vests.  Those contracts were between Plaintiffs and a German company, SCBA Germany.  The contract was put to bid in Germany (negotiation), the company that won the bid was a German company, the vests were delivered to Germany (place of performance), and the injury was felt in Germany.  Plaintiffs appear to argue that the tortious conduct did not occur in Germany, despite that being where the injury, contracting, negotiation and actual misrepresentation occurred.  This argument is not clearly presented, supported or argued.  The Court finds that it is likely Germany, following its own choice of law, would apply German law to these torts, not Michigan's law.

the interests of the involved states . . . [however] the plaintiff's residence is a paramount consideration in determining which state's law to apply in a tort case." *Id*. (citing *Abel v. Eli Lilly & Co*., 418 Mich. 311, 328 (1984)).  In the present action, the place of the wrong and Plaintiffs' residence is Germany.  Finally, it is also clear from the record that Plaintiffs have not asserted any Michigan interests in applying its tort or contract law to these state claims which would outweigh the interests of Germany, whose interests would be to protect its states and citizens from the torts and contract issues alleged.

Finally, the Court recognizes that granting dismissal on *forum non conveniens* to Toyobo and retaining the action against Defendant Bachner is a factor which weighs in favor of retaining the case.  However, Plaintiffs admit their action against Defendant Bachner is only motivated by the fact they were unable to bring an action against SCBA and an action against Defendant Bachner is "the next best thing." (*See* Dkt. No. 84 at 7.)  This admission does support Toyobo's assertion that Defendant Bachner's connection to this claim is also motivated by the strategical advantage of having a Michigan resident as a party.  Therefore, this factor cannot and does not outweigh the obvious interest Germany has in this litigation and Michigan's lack of substantial connection to the claims against Toyobo.

## IV.    CONCLUSION

In conclusion, the Court has determined that the Plaintiffs are afforded less deference in their choice of forum, as it is not their home forum and the *Gilbert* private interest factors weigh slightly in the favor of retaining the case.  The determining factors are the public interest factors where Germany has a strong local interest in this action and where under Michigan choice of law rules (and Plaintiffs own wishes), German law would apply.  Therefore, the Court will grant Defendant Toyobo

Co., Ltd.'s Motion to Dismiss based on *Forum non Conveniens*; however, to ensure justice this dismissal is subject to the following conditions:

(1) Toyobo submit itself to the jurisdiction of German courts and accept service of

process and the German courts are willing to exercise jurisdiction;

(2) Toyobo causes all witness within its control to available to testify in Germany;

(3) Toyobo allows the widest possible use of discovery materials permissible under

German law *or* the Federal Rules of Civil Procedure, subject to the discretion of the

German courts; and

(4) Toyobo pay any judgment rendered by a German court.

These conditions are, of course, limited and related to the action before this Court.  Further, the Court will retain the action against Defendant Bachner as it is clear there is not an adequate alternative forum for the action against him.  An Order of Partial Dismissal consistent with this Opinion shall issue after Toyobo files a stipulation within 14 days of this Opinion agreeing to the conditions.

                                             /s/ Richard Alan Enslen

DATED in Kalamazoo, MI:          RICHARD ALAN ENSLEN
      March 26, 2007            SENIOR UNITED STATES DISTRICT JUDGE