UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERMAN FREE STATE OF
BAVARIA, *et al*.,

        Plaintiffs,

v.

TOYOBO CO., LTD, *et al*.,

        Defendants.     /

Case No. 1:06-CV-407

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Thomas Edgar Bachner, Jr.'s Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). In light of the briefing, there is no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.     BACKGROUND**

This action was brought by Plaintiffs German Free State of Bavaria ("Bavaria") and German Free State of North Rhine-Westphalia ("NRW") (collectively "Plaintiffs") against Defendants Toyobo Co., Ltd. ("Toyobo Japan"), Toyobo America, Inc. ("Toyobo America"), Mark Steven Pickett, and Thomas Edgar Bachner, Jr.[1] to recover damages arising out of the sale of defective bulletproof vests to Plaintiffs by Second Chance Body Armor, Inc. ("SCBA") and its wholly owned subsidiary Second Chance Body Armor GmbH ("SCBA Germany"). Plaintiffs allege thirteen different Counts against Defendants in their Amended Complaint including: innocent, negligent, and intentional misrepresentation; conspiracy; aiding and abetting in misrepresentations; breach of fiduciary duties; aiding and abetting in the breach of fiduciary duties; violation of Racketeering

---

[1] Defendant Thomas Edgar Bachner, Jr. was improperly named in the Complaint as Thomas Edward Bachner, Jr.

Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1964(c);[2] violations of the Michigan Consumer Protection Act; breach of warranties; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.; and violations of Michigan's Uniform Commercial Code.[3]  (Am. Compl. ¶¶ 105-48.)

Plaintiffs' action arises from the allegation that Toyobo Japan and Toyobo America conspired and colluded with SCBA, SCBA Germany, and their employees Mark Pickett and Thomas Bachner to intentionally or negligently misrepresent facts and induce Plaintiffs to purchase approximately 60,000 defective bulletproof vests from SCBA Germany.  Toyobo Japan is a Japanese Company and Toyobo America is a subsidiary of Toyobo Japan and is a New York corporation.  (*Id*. ¶¶ 5-7.) Plaintiffs assert that beginning in May 1996, Toyobo Japan and Toyobo America began an informal partnership with SCBA to develop bulletproof vests which incorporated a synthetic PBO fiber ("Zylon").  (*Id*. ¶ 17.)

In 2001, Bavaria and NRW each made separate proposals for bids to supply lightweight bulletproof vests for their police forces.  (*Id*. ¶ 27.)  A material term of the Bavarian proposal was that the bulletproof vests have a useful life of at least 10 years; a material term in the NRW proposal was that the bulletproof vests have a useful life of at least 5 years.  (*Id*. ¶¶ 28-29.)  SCBA Germany, which Plaintiffs allege was an alter-ego of SCBA, was a bidder on each proposal.  (*Id*. ¶¶ 30-31.) After rounds of testing, Bavaria agreed to award the contract to SBCA Germany and another company, Mehler Vario Systems ("Mehler").  (*Id*. ¶ 35.)  Mehler objected and requested more testing

---

[2]Although the Amended Complaint did not specify or refer to the civil remedy section of the statute, this was its obvious intent.

[3]Plaintiffs also included a count for "exemplary damages," though this count is properly viewed as a request for relief pertinent to other counts rather than a separate legal basis for relief.

– which the Mehler vests failed.  (*Id*. ¶¶ 36-38.)  Mehler eventually withdrew its bid from consideration.  (*Id*. ¶ 39.)

Sometime after July 5, 2001, Mehler was given a Toyobo document from one of its high performance fiber suppliers, Dutch State Mines ("DSM").  (*Id*. ¶¶ 41-44.)  This document indicated that the use of PBO-fiber in bulletproof vests was not justified because accelerated aging tests showed Zylon lost approximately 20 percent of its strength in just over 50 days at 60 degrees Centigrade and 80% humidity and it lost nearly 40% of its strength after the same amount of time at 80 degrees Centigrade and 80% humidity.  (*Id*. ¶¶ 42-43.)  Toyobo concluded, in the document, that this loss of strength was a result of a process known as hydrolysis and, therefore, Toyobo was unable to guarantee a useful life of 10 years.  (*Id*. ¶ 44.)  DSM's document was sent to the Bavarian State Police ("BSP") and Toyobo.  (*Id*. ¶¶ 49-50.)  Toyobo then forwarded the information to SCBA and Defendants Pickett and Bachner.  (*Id*. ¶ 50.)  On July 9, 2001, representatives of the BSP contacted, via telephone, Defendants Pickett and Bachner and other SBCA employees in regards to their concern over the fiber and the vests.  (*Id*. ¶¶ 51-52.)  The representatives for BSP were told that the incorporation of Gore-Tex and the way the fabric was woven solved the hydrolysis issue and the Zylon was suitable for their bulletproof vests.  (*Id*. ¶ 53.)

SCBA held a "Toyobo and Second Chance Zylon Crisis Management Meeting" in Traverse City, Michigan on July 12, 2001, in regards to Bavaria's concerns over the suitability of Zylon.  (*Id*. ¶ 55.)  Defendants Pickett and Bachner were in attendance as were Toyobo Japan employees Masakazu Saito, Yoshinari Ohira, and Tadao Kuroki.  (*Id*. ¶ 56.)  Defendant Bachner and SCBA urged Toyobo Japan to send a letter directly to Bavaria supporting the use of Zylon and requested a 10 year guarantee of Zylon from Toyobo Japan.  (*Id*. ¶¶ 57-58.)  Afterwards, Masakazu Saito of

Toyobo Japan sent a letter to Plaintiffs stating Toyobo Japan considered the test results from DSM to represent a unique characteristic of that particular product, not of Zylon. (Am. Compl. ¶¶ 61-62.)

On or about July 26, 2001, Bavaria awarded SCBA Germany the contract for 27,315 bulletproof vests. (Am. Compl. ¶ 83.) On September 6, 2001, Saito, Ohira and Kuroki traveled again to Michigan to discuss testing of Zylon. (Dkt. No. 82 at 15.) On or about October 30, 2001, NRW awarded SCBA Germany a contract for the purchase of up to 33,600 bulletproof vests. (Am. Compl. ¶ 84.) In December 2001, SCBA Germany's representative, Armin Wagner, met with Kuroki in Germany to discuss again the viability of Zylon. (*Id.* ¶ 89.) In December 2001, Defendant Bachner, and others from SCBA and Toyobo, met in Los Angeles, California for another "Crisis Meeting." (*Id.* ¶ 96.)

Plaintiffs allege that from July 2001 until at least October 3, 2003, SCBA, SCBA Germany, Toyobo Japan and Toyobo America were working together to keep relevant information about the strength and suitability of Zylon from Plaintiffs. (*Id.* ¶ 18.) In late 2003, NRW received its last shipment of bulletproof vests from SCBA Germany and in the spring of 2004, Bavaria received its last shipment of the same. (*Id.* ¶¶ 102-03.) In October 2004, SCBA declared bankruptcy and SCBA Germany initiated insolvency proceedings shortly thereafter. (*Id.* ¶ 104.)

The Court has previously determined that it lacks personal jurisdiction over Toyobo America and also that Defendant Mark Pickett's service of process in this action was insufficient. The Court has further determined that dismissal on *forum non conveniens* is appropriate as to Defendant Toyobo Japan. For these reasons, Toyobo Japan, Toyobo America and Mark Pickett have been dismissed as Defendants in this action and Defendant Bachner remains as the sole Defendant.

## II.     LEGAL STANDARDS

A.     Rule 12(b)(6) Standard

Whether dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law. *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004). The Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *Saglioccolo*, 112 F.3d at 228-29; *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

Though decidedly liberal, Rule 12(b)(6) does require more than the bare assertion of legal conclusions. *Bovee*, 272 F.3d at 361; *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir.

5

2003) (the court need not accept as true legal conclusions and unwarranted factual inferences); *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003) (same).

B.  Rule 9(b) Standard

Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." "When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). However, this particularity requirement does not operate to "mute the general principles set out in Rule 8"; instead the rules must be "read in harmony." *Id*. "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

**III.  ANALYSIS**

A.  Negligent Misrepresentation-Count II

Defendant asserts Plaintiffs' claim against him for negligent misrepresentation must fail for the reasons that Plaintiffs failed to plead facts which establish Defendant owed them a duty of care; Plaintiffs' claim is barred by the Economic Loss Doctrine; and Plaintiffs failed to plead a false representation made by Defendant. To establish a claim for negligent misrepresentation, Plaintiffs must show that "a party justifiably relied to his detriment on information prepared without

6

reasonable care by one who owed the relying party a duty of care." *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 686 N.W.2d 770, 784 (Mich. Ct. App. 2003) (citation omitted).

Defendant first argues that he did not owe Plaintiffs a duty of care. Whether a duty of care exists in this context is a "question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Friedman v. Dozorc*, 312 N.W.2d 585, 591 (Mich. 1981) (citation omitted). "In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability of the risk. Most importantly, for a duty [of care] to arise there must exist a sufficient relationship between the plaintiff and defendant." *New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, 2005 WL 2806234 at *4 (Mich. Ct. App. Oct. 27, 2005) (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 178 (Mich. 1993)). Plaintiffs argue the foreseeability of the risk is the most determinative factor, relying upon *Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992). However, this argument is misguided. The Michigan Supreme Court stated in *Buczkowski* that foreseeability of harm is only *one* factor to consider; "however, other considerations may be, and usually are, more important." *Id*. at 333.

In the present case, Defendant was an officer of SCBA, SCBA is the parent company of SCBA Germany, the German company with which Plaintiffs contracted. Plaintiffs have only alleged one telephone call in which Defendant Bachner participated. (Am. Compl. ¶ 58.) Even taken in a light most favorable to Plaintiffs, this relationship is not sufficient to find a duty on the part of Defendant to Plaintiffs. Further, Plaintiffs have failed to provide any authority to support the argument that such a tenuous relationship is sufficient to create the requisite duty. *See New Dimension*, 2005 WL 2806234 at *4. Plaintiffs' arguments that foreseeability of the risk is

determinative are off-point and are not based on relevant law concerning negligent misrepresentation.

Therefore, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted where there was no duty between the parties.[4]  Moreover, even if Plaintiffs had alleged the requisite duty between Defendant and Plaintiffs, the claim would still fail as a matter of law because Plaintiffs failed to allege a misrepresentation which relates to past or existing facts.  This inquiry is addressed *infra*.

B.    Intentional Misrepresentation-Count III

Defendant argues Plaintiffs' claim for intentional misrepresentation fails because Plaintiffs' failed to plead Defendant made a false statement.[5]  A claim for fraudulent misrepresentation generally requires that: (1) defendant made a material misrepresentation; (2) that representation was false; (3) when the defendant made the representation, the defendant knew that it was false or made it recklessly, without knowledge of its trust as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976).  Misrepresentations must relate to past or existing facts, and a "promise regarding the future cannot form the basis of a misrepresentation claim." *Forge v. Smith*, 580 N.W.2d 876, 884 (Mich. 1998).  Generally, "an action for fraud may not be predicated upon the

---

[4]As the Court finds Plaintiffs' claim fails for lack of a requisite duty, and Plaintiffs failed to allege an appropriate misrepresentation, the Court declines to address Defendant's argument concerning the Economic Loss Doctrine.

[5] Defendant also requests dismissal based the Economic Loss Doctrine, though the Court's holding regarding misrepresentation makes any analysis of the Economic Loss Doctrine unnecessary.  *See* n.3, *supra*.

8

expression or an opinion or salesmen's talk in promoting a sale, referred to as 'puffing.'" *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987); *see also Hi-Way Motor Co.*, 247 N.W.2d at 333. Defendant argues Plaintiffs have failed to allege that Defendant made a misrepresentation that related to past or existing facts. Plaintiffs' Amended Complaint states Defendant "represented to [Plaintiffs] that any problems associated with Zylon fiber were caused by the manner the fiber was woven by DSM and by hydrolysis. [Defendant] represented that the way the fiber was woven by SCBA, plus the incorporation of a layer of Gore-Tex in[to] its vests to solve the hydrolysis issue, made Zylon suitable for use in the SCBA bulletproof vests." (Am. Compl. ¶ 52.)

Viewing the facts most favorably to Plaintiffs, the Court finds that this statement (the only one attributed to Defendant with particularity as required under Rule 9(b)) is a future promise of performance or "a mere expression of professional opinion or of 'puffing,' neither of which would be actionable." *Webb v. First of Mich. Corp.*, 491 N.W.2d 851, 853 (Mich. Ct. App. 1992); *see also Hayes Constr. Co. v. Silverthorn*, 72 N.W.2d 192 (Mich. 1955) (holding that defendant's assertions as to the merits of a Coleman furnace, "that it would do the job, that is was miserly in its consumption of fuel, and the maintenance nil, [were] puffing.") Therefore, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted where they have failed to allege a misrepresentation which relates to past or existing facts.

C.   Aiding and Abetting Negligent or Intentional Misrepresentation-Count V

The essential elements required for finding liability for aiding and abetting are: (1) an independent wrong exists; (2) the aider or abettor knows of the wrong; and (3) the aider or abettor provides substantial assistance to affect the wrong. *See Carson Fischer, PLC v. Standard Fed. Bank*, 2005 WL 292343 at *6 (Mich. App. Feb. 8, 2005) (citing Restatement of Torts, 2d, § 876(b)). Since

9

the misrepresentation Counts fails to state a claim, the aiding and abetting count also fails as a matter of law. *See Id*.

D.        Aiding and Abetting Breach of (SBCA's) Fiduciary Duties-Count VII

Plaintiffs claim Defendant aided and abetted SCBA in the breach of its separate fiduciary duties to Plaintiffs. (Am. Compl. ¶¶ 128-29.) Defendant argues this claim fails as a matter of law because SCBA did not owe a fiduciary duty to Plaintiffs and, therefore, he cannot have aided or abetted it in the breach of a non-existent duty. In Michigan, a fiduciary relationship exists when "confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one advantage or superiority over the other . . ." *Vicencio v. Ramirez*, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995); *Boden v. Renihan*, 300 N.W.2d. 53, 58 (Mich. 1941). However, it is obvious that a fiduciary duty cannot exist where the interests of the party are adverse. *See Beaty v. Hertzberg & Golden, P.C.*, 571 N.W.2d 716, 722 (Mich. 1997). Michigan courts have also held that allegations of inexperience and reliance are insufficient to give rise to a fiduciary relationship. *Ulrich v. Fed. Land Bank*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991). Fiduciary relationships usually arise in one of four situations:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*In re Karmey*, 658 N.W.2d 796, 799 n.2 (Mich. 2003) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)).

In the instant action, Plaintiffs allege SBCA owed them such a fiduciary duty where they were relying on SBCA's knowledge and expertise in the area of bulletproof vests. The Court finds that this relationship is best described as an arms-length public business relationship. Plaintiffs were seeking to purchase millions of dollars worth of bulletproof vests and conducted their own testing as well as an open bidding process. There are no relevant facts alleged besides the bare assertion that SBCA knew more about its product than Plaintiffs did and therefore, Plaintiffs trusted SBCA's assertions regarding their product. That SBCA knew more about its product than Plaintiffs is no different than most business transactions, and is insufficient as a matter of law to create a fiduciary duty.

In a recent unpublished decision, *Waun v. Univ. Coin Laundry Mach.*, 2006 WL 2742007 at *8 (Mich. Ct. App. Sept. 6, 2006), the Michigan Court of Appeals addressed a similar situation where a plaintiff alleged defendants had breached a fiduciary duty when it had grossly exaggerated income projections that were used to justify a site for the business and entice plaintiff to start the business and purchase equipment from defendants. *Id*. The *Waun* court held, where defendants were seeking to sell plaintiff "hundreds of thousands of dollars" worth of equipment, the parties had adverse interests. *Id*. The *Waun* court also held that "claims of inexperience and reliance on defendants' expertise, a common situation in today's business environment, are not sufficient to create a fiduciary relationship." *Id*. Such is the situation in the present action. *See Teadt v. Lutheran Church of Mo. Synod*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999). Therefore, where Plaintiffs have failed as a matter of law to show that SBCA owed them a fiduciary duty, their claim that Defendant aided and abetted SBCA in the breach of this duty must likewise fail.

11

E.      Conspiracy-Count IV

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins., Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 365 (Mich. Ct. App. 1992) (citing *Feaheny v. Caldwell*, 437 N.W.2d 358 (Mich. Ct. App. 1989) and *Temborius v. Slatkin*, 403 N.W.2d 821, 827-28 (Mich. Ct. App. 1986)). The Court finds that where Plaintiffs claims of underlying tortious activity have failed as a matter of law, a claim for conspiracy must fail for the reason Plaintiffs failed to allege an actionable tort. *See Admiral*, 486 N.W.2d at 365 (dismissing conspiracy claim where plaintiff failed to allege an underlying tort.)

F.      RICO violation-Count VIII

Pursuant to RICO, 18 U.S.C. § 1962(c), it is unlawful for "any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ." To sustain a RICO violation claim, a plaintiff must show: (1) two or more predicate offenses; (2) the existence of an enterprise; (3) a nexus between the pattern of racketeering and the enterprise; and (4) an injury caused by the other three factors. *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2001). "In addition, the Supreme Court has held that in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id*. (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).

Defendant argues Plaintiffs' RICO claim fails because they have not alleged a RICO "enterprise" as required under the statute. A RICO enterprise is defined as "any individual,

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO person "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(3). In the present case, Plaintiffs have alleged Toyobo, SCBA, Mark Pickett and Defendant Bachner conspired to make misrepresentations and omissions to Plaintiffs to induce them to buy bulletproof vests and that activity "amounted to a pattern of racketeering activity in the affairs of SCBA, Toyobo and their joint enterprise." (Am. Compl. ¶ 131.) Plaintiffs appear to allege in their Amended Complaint that SCBA and Toyobo together are an "enterprise" under the statute. Additionally, Plaintiffs argue in their Response that SCBA and Toyobo are also separate RICO enterprises. This claim is without merit; the RICO enterprise must be separate from the RICO person. *Durant v. ServiceMaster Co.*, 159 F. Supp. 2d 977, 981-82 (E.D. Mich. 2001) ("A RICO enterprise cannot merely consist of the named defendants."); *see also Ingraham v. IRS Bonus Partners*, 2006 WL 89868 at *2 (W.D. Mich. Jan. 12, 2006) (J., Enslen) (holding the same). Therefore, this argument fails.

Plaintiffs further argue SCBA and Defendants constituted an "association-in-fact" under RICO. "To satisfy the enterprise requirement, an association-in-fact must be an on-going organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1373, 1386 (6th Cir. 1993) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981).) Further, Plaintiff must show "some sort of chain of command or other evidence of a hierarchy, even a highly limited one." *VanDenBroeck*, 210 F.3d at 700. In the present case, Plaintiffs have failed to allege an independent structure which existed outside of the alleged 'racketeering activity' between these two companies

or any chain of command. *See Chang v. Chen*, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing cases in support). As the Sixth Circuit has held, "[s]imply conspiring to commit a fraud it not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization *for other purposes*." *VanDenBroeck*, 210 F.3d at 700 (emphasis added). Moreover, Plaintiffs have not alleged that Defendant "participated in the operation or management of the enterprise itself." *Id*. at 699.

Even if the Court were to find Plaintiffs adequately alleged a RICO enterprise, Plaintiffs' RICO claim still fails as a matter of law because Plaintiffs failed to allege in their Amended Complaint the requisite two predicate acts to establish a "pattern of racketeering." *Id*. Plaintiffs assert the contracts they were fraudulently induced to sign amount to two predicate acts of racketeering. However, common-law fraud is not sufficient to establish a RICO claim. *See* 18 U.S.C. § 1961(1); *see also D'Ambrosi*, 4 F.3d at 1385 (holding that allegations involving breach of contract and anticipatory repudiation could not support a RICO claim); *see also Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354 (6th Cir. 1990) ("The definition of racketeering activity contained in 18 U.S.C. § 1961(1) refers to various federal offenses, including mail fraud and wire fraud, *i.e.* predicate acts.") Plaintiffs raise allegations of mail fraud, wire fraud and a violation of the Travel Act, 18 U.S.C. § 1952, in their Response; however, none of these allegations are contained in Plaintiffs Amended Complaint. To the extent Plaintiffs argue their references to telephone and email communications give rise to these allegations, this argument is without merit. These vague references to telephone and email communications are not alleged with the particularity required under Rule 9(b) to constitute claims of mail fraud or wire fraud. Therefore, even in a light

most favorable to Plaintiffs, where Plaintiffs failed to allege a RICO enterprise and also failed to allege two predicate acts of racketeering activity, Plaintiffs' RICO claim must fail as a matter of law.

G.     Michigan Consumer Protection Act-Count IX

Defendant argues Plaintiffs' claim of a violation of the Michigan Consumer Protection Act ("MCPA"), MICH. COMP. LAW § 445.901 *et seq*., fails because the claim does not come within the ambit of the statute.  "The MCPA prohibits the use of unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 392 (Mich. Ct. App. 1999); MICH. COMP. LAW § 445.903(1).  "Trade or commerce" is defined by the MCPA as meaning "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . ." MICH. COMP. LAW. § 445.902(d).

To determine whether an item is for "personal, family, or household purposes" as defined by the MCPA, the Court must determine whether "an item is purchased primarily for business or commercial rather than personal purposes." *Zine*, 600 N.W.2d at 393.  Plaintiffs argue that although they are German states and purchased the vests through a public bidding process, the fact the vests were to be worn *personally* by police officers means the item was primarily for personal use as defined under the statute.  The Court finds this to be a contortion of the purpose and the meaning of the MCPA.  The MCPA has been found not to extend to businesses and the legislative history of the Act indicates that it was designed to protect consumers as opposed to businesses or commerical or public entities.  *Robertson v. State Farm Fire & Casualty Co.*, 890 F. Supp. 671, 680 (E.D. Mich. 1995) (this reasoning addressed and expressly adopted by Michigan courts in *Zine*, 600 N.W.2d at 393 and *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634-35 (Mich. 2003)) (citing *Wynn*

15

*Oil Co. v. Am. Way Serv. Corp.*, 736 F. Supp. 746, 757 (E.D. Mich. 1990).) The *Robertson* court held that

> it would be rare indeed (if even possible) for a corporation to purchase goods for "personal, family or household purposes." The only scenario the court can envision is one wherein a corporation would buy its employees products as a holiday bonus, *e.g.*, televisions, stereos, etc., which will be used by employees in their respective homes.

890 F. Supp. at 679; see also *Jackson Hog Producers v. Consumers Power Co.*, 592 N.W.2d 112, 117 (Mich. Ct. App. 1999) ( holding MCPA did not apply "where plaintiffs purchased electricity from defendant primarily for the purpose of operating their business rather than 'primarily for personal, family, or household purposes.'") In the present case, Plaintiffs, German states, engaged in a public bidding process in which they purchased bulletproof vests for use by their police forces and military. Even if all police officers or miliary personnel would be given their own vest and perhaps *personally fitted* for such a vest as Plaintiffs assert, this does not change the type or purpose of the purchase. Plaintiffs purchased the vests to be used in the course of public police business. Therefore, even viewed in a light most favorable to Plaintiffs, their claim fails under MCPA as the item at issue was not for "personal, family, or household purposes."

H.     UCC Fraud-Count XII

Defendant argues Plaintiffs claim under "UCC fraud" should be dismissed for the reasons that no such claim exists and, in the alternative, Plaintiffs have failed to plead such a claim with the specificity required by Rule 9(b). Plaintiffs do not appear to address this argument in their Response, nor do they provide the Court with any indication from their Amended Complaint what the UCC fraud is based upon or how Defendant would become liable under the UCC. Therefore, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted for the reason that

16

this claim does not exist against Defendant. Further, to the extent this claim might exist, the Court agrees with Defendant that Plaintiffs have failed to allege in their Amended Complaint any particularity on which this claim could be based and therefore, a dismissal under Rule 9(b) is warranted.

I.      Exemplary Damages-Count XIII[6]

Defendant argues Plaintiffs have failed to state a claim as to Exemplary Damages because such a claim does not exist in Michigan and is rather a form of actual damages and not a separate claim. *See Fonstad v. Teal*, 2005 WL 1705514, at *5 (Mich. Ct. App. July 21, 2005) (dismissing claim for exemplary damages because "exemplary damages are simply a form of actual damages . . . [i]t does not constitute a separate claim.") The Court concurs and will dismiss said claim due to failure to allege any supporting legal basis for the damages sought.

**IV.    CONCLUSION**

Judgment shall enter in favor of Defendant and against Plaintiffs, dismissing all of Plaintiffs' claims with prejudice.

DATED in Kalamazoo, MI:   /s/ Richard Alan Enslen
                          RICHARD ALAN ENSLEN
     March 26, 2007       SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The Court notes the claim of Exemplary Damages is listed in Plaintiffs' Amended Complaint as Count XI; however, it is actually Count XIII.