UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERMAN FREE STATE OF
BAVARIA, *et al.*,

      Plaintiffs,

v.

TOYOBO CO., LTD, *et al.*,

      Defendants.    /

Case No. 1:06-CV-407

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendant Mark Steven Pickett's Motion to Dismiss Plaintiffs' Second Amended Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). In light of the briefing, there is no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

This action was brought by Plaintiffs German Free State of Bavaria ("Bavaria") and German Free State of North Rhine-Westphalia ("NRW") (collectively "Plaintiffs") against Defendants Toyobo Co., Ltd. ("Toyobo Japan"), Toyobo America, Inc. ("Toyobo America"), Thomas Edgar Bachner Jr.,[1] and Mark Steven Pickett to recover damages arising out of the sale of defective bulletproof vests to Plaintiffs by Second Chance Body Armor, Inc. ("SCBA") and its wholly-owned subsidiary Second Chance Body Armor GmbH ("SCBA Germany").[2]

---

[1] Thomas Edgar Bachner Jr. was improperly named in the Complaint as Thomas Edward Bachner Jr.

[2] This Opinion largely resembles the Court's Opinion in *German Free State of Bavaria v. Toyobo Co., LTD*, 480 F. Supp. 2d 958 (2007), in which Defendant Bachner brought a substantially similar motion to dismiss Plaintiffs' First Amended Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Court granted Bachner's motion to dismiss, including on all of the grounds Defendant Pickett now seeks to have the Second Amended Complaint dismissed. *See Bavaria*, 480 F. Supp. 2d at 693–98.

Plaintiffs allege six different Counts against Defendant Pickett in their Second Amended Complaint: negligent misrepresentation, intentional misrepresentation, conspiracy, aiding and abetting negligent or intentional misrepresentation, aiding and abetting breach of fiduciary duties, and violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). (Sec. Am. Compl. ¶¶ 169–96.)

Plaintiffs' action arises from the allegation that Toyobo Japan and Toyobo America conspired and colluded with SCBA, SCBA Germany, and their employees Bachner and Defendant Pickett to intentionally or negligently misrepresent facts and induce Plaintiffs to purchase approximately 60,000 defective bulletproof vests from SCBA Germany. Toyobo Japan is a Japanese Company and Toyobo America is a subsidiary of Toyobo Japan and a New York corporation. (*Id*. ¶¶ 6, 8.) Plaintiffs assert that beginning in May 1996, Toyobo Japan and Toyobo America began an informal partnership with SCBA to develop bulletproof vests which incorporated a synthetic PBO fiber named Zylon. (*Id*. ¶ 28.)

In 2001, Bavaria and NRW each made separate proposals for bids to supply lightweight bulletproof vests for their police forces. (*Id*. ¶ 47.) A material term of the Bavarian proposal was that the vests have a useful life of at least 10 years; a material term in the NRW proposal was that the vests have a useful life of at least 5 years. (*Id*. ¶¶ 48–49.) SCBA Germany, which Plaintiffs allege was an alter-ego of SCBA, was a bidder on each proposal. (*Id*. ¶¶ 50–51.) After rounds of testing, Bavaria agreed to award the contract to both SBCA Germany and another company, Mehler Vario Systems ("Mehler"). (*Id*. ¶ 55.) Mehler objected to the joint award and requested a last round of ballistic testing before Bavaria was awarded the contract, which Bavaria granted although the Mehler vests failed the testing. (*Id*. ¶¶ 56–58.) Mehler eventually withdrew its bid from consideration. (*Id*. ¶ 59.)

Sometime after July 5, 2001, Mehler was given a Toyobo document from one of its high performance fiber suppliers, Dutch State Mines ("DSM"), indicating that the use of PBO-fiber in vests was not justified because accelerated aging tests showed Zylon lost approximately 20% of its strength in just over 50 days at 60 degrees Centigrade and 80% humidity, and lost nearly 40% of its strength after the same amount of time at 80 degrees Centigrade and 80% humidity. (*Id*. ¶¶ 60–62.) Toyobo concluded that this loss of strength was a result of a process known as hydrolysis and, therefore, Toyobo was unable to guarantee a useful life of 10 years. (*Id*. ¶¶ 64–65.) DSM's document was sent to the Bavarian State Police ("BSP") and Toyobo. (*Id*. ¶¶ 68–69.) Toyobo then forwarded the information to SCBA, Bachner, and Defendant Pickett. (*Id*. ¶ 69.) On July 9, 2001, representatives of the BSP telephoned Bachner, Defendant Pickett, and other SBCA employees to express their concern. (*Id*. ¶¶ 71–72.) The representatives for BSP were told that the incorporation of Gore-Tex and the fabric's weave solved the hydrolysis issue, making the Zylon suitable for bulletproof vests. (*Id*. ¶ 72.)

SCBA held a meeting in Traverse City, Michigan on July 12, 2001, to address Bavaria's concerns. (*Id*. ¶ 75.) Bachner and Defendant Pickett were in attendance as were Toyobo Japan employees Masakazu Saito, Yoshinari Ohira, and Tadao Kuroki. (*Id*. ¶ 76.) Bachner and SCBA urged Toyobo Japan to send a letter directly to Bavaria supporting the use of Zylon and requested a 10-year guarantee of Zylon from Toyobo Japan. (*Id*. ¶ 78.) Afterwards, Toyobo Japan sent a letter to Plaintiffs stating that Toyobo Japan considered the test results from DSM to represent a unique characteristic of that particular product, not of Zylon. (*Id.* ¶ 81.)

On or about July 26, 2001, Bavaria awarded SCBA Germany the contract for 27,315 vests. (*Id.* ¶ 107.) Saito, Ohira and Kuroki later traveled to Michigan to discuss testing of Zylon. (Dkt. No.

82 at 15.) In October 2001, NRW awarded SCBA Germany a contract for the purchase of up to 33,600 bulletproof vests. (Sec. Am. Compl. ¶ 108.) Afterwards, SCBA Germany's representative, Armin Wagner, met with Kuroki in Germany to discuss again the viability of Zylon. (*Id.* ¶ 113.) Bachner and others from SCBA and Toyobo also met in Los Angeles, California for a "Crisis Meeting." (*Id.* ¶ 120.)

Plaintiffs allege that from July 2001 until at least October 8, 2003, SCBA, SCBA Germany, Toyobo Japan and Toyobo America were working together to keep relevant information about the strength and suitability of Zylon from Plaintiffs. (*Id.* ¶¶ 73–74, 77–78, 80–81, 87, 93–97, 100, 104–05, 109–11, 115, 117, 119–21, 126–28.) NRW received its last shipment of vests from SCBA Germany in late 2003. Bavaria received its last shipment of vests in the spring of 2004. (*Id.* ¶¶ 129–30.) SCBA declared bankruptcy in October 2004 and SCBA Germany initiated insolvency proceedings shortly thereafter. (*Id.* ¶ 131.)

This Court has previously determined that it lacks personal jurisdiction over Toyobo America. The Court dismissed on *forum non conveniens* claims against Toyobo Japan. The Court has also granted Bachner's motion to dismiss based on Federal Rules of Civil Procedure 9(b) and 12(b)(6). *See supra*, n.2. Because Toyobo Japan, Toyobo America and Bachner have been dismissed as Defendants, Defendant Pickett is the sole remaining Defendant.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

Whether dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law. *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *Arrow v. Fed. Reserve Bank*, 358 F.3d 392, 393 (6th Cir. 2004). The Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as

true, *Smith*, 378 F.3d at 568, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Roberson*, 399 F.3d at 794; *Arrow*, 358 F.3d at 393. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997); *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001); *Saglioccolo*, 112 F.3d at 228–29; *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

Though decidedly liberal, Rule 12(b)(6) requires more than the bare assertion of legal conclusions. *Bovee*, 272 F.3d at 361; *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). The complaint should give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)); *see also Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (holding the court need not accept as true legal conclusions and unwarranted factual inferences); *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003) (same). As the Supreme Court has recently said, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" because "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell*

*Atlantic Corp. v. Twombly*, No. 05-1126, 127 S. Ct. 1955, 1964–65 (U.S. May 21, 2007) (citations omitted).

    B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." "When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). However, this particularity requirement does not operate to "mute the general principles set out in Rule 8;" instead, the rules must be "read in harmony." *Id.* "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).

**III.**    **ANALYSIS**

    A.    Interplay Between Rule 12(b)(6) and Rule 15(a)

Plaintiffs initially argue that because the Court granted Plaintiffs' previous request to amend their Complaint, (*see* Dkt. No. 145), Defendant Pickett is now barred from bringing a Rule 12(b)(6) motion.[3] Amendments to a complaint are governed by Federal Rule of Civil Procedure 15(a), which

---

[3] "[T]he Court determined under the same standard that applies to the present motion that the Second Amended Complaint stated claims for relief. For the very reasons this Court found Plaintiffs' amendments were not futile, Mr. Pickett's motion to dismiss should be denied." (Resp. 1.)

6

states that "a party may amend the party's pleading only be leave of court . . . and leave shall be freely given when justice so requires." The futility of a proposed amendment can be a justifiable reason for denying leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose*, 203 F.3d at 421 (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)). Thus, in reviewing for "futility," courts apply the "same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (citations omitted).

Although some courts have agreed with Plaintiffs' argument,[4] this Court will treat Defendant Pickett's Rule 12(b)(6) Motion as a Motion for Reconsideration; thus, the Court will review its previous decision granting Plaintiffs leave to amend their complaint because in its previous Opinion, it was made clear that "the Court remains dubious as to the merits of the claims asserted," (Dkt. No. 145 at n.4), and only "ostensibly" reviewed Plaintiffs' claims. (*Id.* at 5.) Under Local Rule 7.4, the "movant shall not only demonstrate a palpable defect by which the Court and the parties have been misle[d], but also show that a different disposition of the case must result from a correction thereof." The Court finds that palpable defects exist in the Court's decision to grant Plaintiffs leave to amend their First Amended Complaint, and that a different disposition of the case results therefrom.

---

[4]*See Debreceni v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 18 (D. Mass 1989) (finding that "the court should treat the opposition to a motion to amend as a motion to dismiss the new claims and then evaluate them on their merits") (citing *Connors v. Marontha Coal Co., Inc.*, 670 F. Supp. 45, 46 (D.D.C. 1987) ("In evaluating whether amendment would be futile, we treat [the opposition to the motion to amend] as a motion to dismiss pursuant to [Rule 12(b)(6)].")).

B.      Negligent Misrepresentation

Defendant Pickett asserts Plaintiffs' claim against him for negligent misrepresentation must fail since Plaintiffs failed to plead facts establishing he owed them a duty of care; Plaintiffs' claim is barred by the Economic Loss Doctrine; and Plaintiffs failed to plead a false representation made by Defendant Pickett. To establish a claim for negligent misrepresentation, Plaintiffs must show that "a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Mable Cleary Trust v. Edward-Marlah Muzyl Trust*, 686 N.W.2d 770, 784 (Mich. Ct. App. 2003) (citation omitted).

Defendant Pickett first argues that he did not owe Plaintiffs a duty of care. Whether a duty of care exists in this context is a "question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Friedman v. Dozorc*, 312 N.W.2d 585, 591 (Mich. 1981) (citation omitted). "In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability of the risk. Most importantly, for a duty [of care] to arise there must exist a sufficient relationship between the plaintiff and defendant." *New Dimension Dev., Inc. v. Orchard, Hiltz & McCliment, Inc.*, No. 262565, 2005 WL 2806234, at *4 (Mich. Ct. App. Oct. 27, 2005) (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 178 (Mich. 1993)). Plaintiffs argue the foreseeability of the risk is the most determinative factor, relying upon *Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992). However, this argument is misguided. The Michigan Supreme Court stated in *Buczkowski* that foreseeability of harm is only *one* factor to consider; "however, other considerations may be, and usually are, more important." *Id*. at 333.

In the present case, Defendant Pickett was an officer of SCBA. SCBA is the parent company of SCBA Germany, the company with which Plaintiffs contracted. Plaintiffs have only alleged one

8

telephone call in which Defendant Pickett participated. (Sec. Am. Compl. ¶ 74.) Even taken in a light most favorable to Plaintiffs, this relationship is not sufficient to find a duty on the part of Defendant Pickett to Plaintiffs. Further, Plaintiffs have failed to provide any authority to support the argument that such a tenuous relationship is sufficient to create the requisite duty. *See New Dimension*, 2005 WL 2806234, at *4. Plaintiffs' arguments that foreseeability of the risk is determinative are off-point and are not based on relevant law concerning negligent misrepresentation.

Therefore, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted where there was no duty between the parties.[5] Moreover, even if Plaintiffs had alleged the requisite duty between Defendant Pickett and Plaintiffs, the claim would still fail as a matter of law because Plaintiffs failed to allege a misrepresentation which relates to past or existing facts. This inquiry is addressed *infra*. This represents a palpable defect in the Court's previous Opinion granting Plaintiffs' leave to amend their Complaint and requires dismissal of the negligent misrepresentation claim.

    C.    Intentional Misrepresentation

Defendant Pickett argues Plaintiffs' claim for intentional misrepresentation fails because Plaintiffs failed to plead he made a false statement.[6] A claim for fraudulent misrepresentation generally requires that: (1) the defendant made a material misrepresentation; (2) that representation was false; (3) when the defendant made the representation, the defendant knew that it was false or

---

[5] As the Court finds Plaintiffs' claim fails for lack of a requisite duty, and Plaintiffs failed to allege an appropriate misrepresentation, the Court declines to address Defendant Pickett's argument concerning the Economic Loss Doctrine.

[6] Defendant Pickett also requests dismissal based on the Economic Loss Doctrine; however, the Court's holding regarding misrepresentation makes any analysis of the Economic Loss Doctrine unnecessary. *See supra*, n.5.

made it recklessly, without knowledge of its trust as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damages. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Misrepresentations must relate to past or existing facts, and a "promise regarding the future cannot form the basis of a misrepresentation claim." *Forge v. Smith*, 580 N.W.2d 876, 884 (Mich. 1998). Generally, "an action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as 'puffing.'" *Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987). Defendant Pickett argues Plaintiffs have failed to allege that he made a misrepresentation of past or existing facts. Plaintiffs' Second Amended Complaint states Defendant Pickett:

> represented . . . that any problems associated with Zylon fiber were caused by the way the fiber was woven by DSM and by hydrolysis. Bachner, Pickett and others at SCBA represented that the way the fiber was woven by SCBA, plus the incorporation of a layer of Gore-Tex in its vests to solve the hydrolysis issue, made Zylon suitable for use in the SCBA bulletproof vests.

(Sec. Am. Compl. ¶ 74.)

Viewing the facts most favorably to Plaintiffs, the Court finds that this statement, which is the only statement attributed to Defendant Pickett pled with particularity as required under Rule 9(b), is a future promise of performance or "a mere expression of professional opinion or of 'puffing,' neither of which [is] actionable." *Webb v. First of Mich. Corp.*, 491 N.W.2d 851, 853 (Mich. Ct. App. 1992); *see also Hayes Constr. Co. v. Silverthorn*, 72 N.W.2d 190, 192 (Mich. 1955) (holding that the defendant's assertions as to the merits of a Coleman furnace, "that it would do the job, that it was miserly in its consumption of fuel, and the maintenance nil . . . [were] puffing"). Therefore, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted where they have failed

10

to allege a misrepresentation which relates to past or existing facts. This represents a palpable defect in the Court's previous Opinion granting Plaintiffs' leave to amend their Complaint and requires dismissal.

    D.    Conspiracy

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins., Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 365 (Mich. Ct. App. 1992) (citations omitted). The Court finds that where Plaintiffs' claims of underlying tortious activity have failed as a matter of law, a claim for conspiracy must fail for the reason Plaintiffs failed to allege an actionable tort. *See id.* at 365 (dismissing conspiracy claim where plaintiff failed to allege an underlying tort). This finding mandates dismissal to correct a palpable defect in the Court's previous Opinion.

    E.    Aiding and Abetting Negligent or Intentional Misrepresentation

The essential elements required for finding liability for aiding and abetting are: (1) an independent wrong exists; (2) the aider or abettor knows of the wrong; and (3) the aider or abettor provides substantial assistance to affect the wrong. *See Carson Fischer, PLC v. Standard Fed. Bank*, Nos. 248125, 248167, 2005 WL 292343, at *6 (Mich. Ct. App. Feb. 8, 2005) (citing Restatement of Torts, 2d, § 876(b)). Since the misrepresentation Counts fails to state a claim, the aiding and abetting count also fails as a matter of law. *See id.* This finding mandates dismissal to correct the Court's previous Opinion.

F.     Aiding and Abetting Breach of Fiduciary Duties

Plaintiffs claim Defendant Pickett aided and abetted SCBA in the breach of its separate fiduciary duties to Plaintiffs. (Sec. Am. Compl. ¶¶ 190–93.) Defendant Pickett argues this claim fails as a matter of law because SCBA did not owe a fiduciary duty to Plaintiffs and, therefore, he cannot have aided or abetted it in the breach of a non-existent duty. In Michigan, a fiduciary relationship exists when "confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one advantage or superiority over the other." *Vicencio v. Ramirez*, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995); *Boden v. Renihan*, 300 N.W.2d. 53, 58 (Mich. 1941). However, it is obvious that a fiduciary duty cannot exist where the interests of the parties are adverse. *See Beaty v. Hertzberg & Golden, P.C.*, 571 N.W.2d 716, 722 (Mich. 1997). Michigan courts have held that allegations of inexperience and reliance are insufficient to give rise to a fiduciary relationship. *Ulrich v. Fed. Land Bank*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991). Fiduciary relationships usually arise in one of four situations:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*In re Karmey*, 658 N.W.2d 796, 799 n.2 (Mich. 2003) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)).

In the instant action, Plaintiffs allege SBCA owed them a fiduciary duty where they were relying on SBCA's knowledge and expertise. The Court finds that this relationship is best described

as an arms-length public business relationship. Plaintiffs were seeking to purchase millions of dollars worth of vests and conducted their own testing before the open bidding process. There are no relevant facts alleged besides the bare assertion that SBCA knew more about its product than Plaintiffs did. This allegation is insufficient as a matter of law to create a fiduciary duty.

In an unpublished decision, *Waun v. Univ. Coin Laundry Mach.*, No. 267954, 2006 WL 2742007, at *8 (Mich. Ct. App. Sept. 26, 2006), the Michigan Court of Appeals addressed a similar situation where a plaintiff alleged the defendants had breached a fiduciary duty when it had grossly exaggerated income projections that were used to entice the plaintiff to start a business and purchase equipment from the defendants. *Id*. The *Waun* Court held, where the defendants were seeking to sell the plaintiff "hundreds of thousands of dollars" worth of equipment, the parties had adverse interests. *Id*. The *Waun* Court also held that "claims of inexperience and reliance on defendants' expertise, a common situation in today's business environment, are not sufficient to create a fiduciary relationship." *Id*. Such is the situation in the present action. *See Teadt v. Lutheran Church of Mo. Synod*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999). Therefore, Plaintiffs' claim that Defendant Pickett aided and abetted SBCA in the breach of this duty likewise fails. The Court erred in granting Plaintiffs' leave to amend their Complaint since these claims fail as a matter of law.

G.   RICO

Pursuant to RICO, 18 U.S.C. § 1962(c), it is unlawful for "any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To sustain a RICO violation claim, a plaintiff must show: (1) two or more predicate offenses; (2) the existence of an enterprise; (3) a nexus between the pattern of

racketeering and the enterprise; and (4) an injury caused by the other three factors. *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2001). "In addition, the Supreme Court has held that in order to be held responsible under the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *Id*. (citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)).

Defendant Pickett argues Plaintiffs' RICO claim fails because Plaintiffs have not alleged a RICO "enterprise" as required under the statute. A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO person "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(3).

Plaintiffs have alleged Toyobo, SCBA, Bachner, and Defendant Pickett conspired to make misrepresentations and omissions to Plaintiffs to induce them to buy bulletproof vests and that the activity "amounted to a pattern of racketeering activity in the affairs of SCBA, Toyobo and their joint enterprise." (Sec. Am. Compl. ¶ 197.) Plaintiffs appear to allege in their Second Amended Complaint that SCBA and Toyobo together are an "enterprise" under the statute. Additionally, Plaintiffs allege that SCBA and Toyobo are also separate RICO enterprises. (*Id.* ¶¶ 199–200.) This claim is without merit; the RICO enterprise must be separate from the RICO person. *Durant v. ServiceMaster Co.*, 159 F. Supp. 2d 977, 981–82 (E.D. Mich. 2001) ("A RICO enterprise cannot merely consist of the named defendants."); *see also Ingraham v. IRS Bonus Partners*, No. 1:05-CV-367, 2006 WL 89868, at *2 (W.D. Mich. Jan. 12, 2006) (same). Therefore, this argument fails.

Plaintiffs further argue SCBA and other Defendants constituted an "association-in-fact" under RICO. "To satisfy the enterprise requirement, an association-in-fact must be an on-going organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1373, 1386 (6th Cir. 1993) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Further, Plaintiffs must show "some sort of chain of command or other evidence of a hierarchy, even a highly limited one." *VanDenBroeck*, 210 F.3d at 700. Plaintiffs have failed to allege an independent structure which existed outside of the alleged "racketeering activity" between these two companies or any chain of command. *See Chang v. Chen*, 80 F.3d 1293, 1297 (9th Cir. 1996) (citing cases in support). As the Sixth Circuit has held, "[s]imply conspiring to commit a fraud it not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization *for other purposes*." *VanDenBroeck*, 210 F.3d at 700 (emphasis added). Moreover, Plaintiffs have not showed that Defendant Pickett "participated in the operation or management of the enterprise itself." *Id*. at 699. Plaintiffs' conclusory allegations are insufficient.

Even if the Court were to find Plaintiffs adequately alleged a RICO enterprise, Plaintiffs' RICO claim still fails as a matter of law because Plaintiffs failed to allege in their Second Amended Complaint the predicate acts establishing a "pattern of racketeering." *See id*. Plaintiffs' legal conclusory allegations have no factual support. Plaintiffs assert the contracts they were fraudulently induced to sign amount to two predicate acts of racketeering. However, common-law fraud is not sufficient to establish a RICO claim. *See* 18 U.S.C. § 1961(1); *see also D'Ambrosi*, 4 F.3d at 1385 (holding that allegations involving breach of contract and anticipatory repudiation could not support a RICO claim); *Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354 (6th Cir. 1990) ("The definition

of racketeering activity contained in 18 U.S.C. § 1961(1) refers to various federal offenses, including mail fraud and wire fraud, *i.e.* predicate acts."). Plaintiffs raise allegations of mail fraud and wire fraud in their Second Amended Complaint. To the extent Plaintiffs argue their references to telephone and email communications give rise to these allegations, this argument is without merit. These vague references to telephone and email communications are not alleged with the particularity required under Rule 9(b) to constitute claims of mail fraud or wire fraud. Therefore, even in a light most favorable to Plaintiffs, where Plaintiffs failed to allege a RICO enterprise and also failed to allege two predicate acts of racketeering activity, Plaintiffs' RICO claim must fail as a matter of law. This represents a palpable defect in the Court's previous Opinion granting Plaintiffs' leave to amend their Complaint. As the Court has demonstrated, a different disposition of the case results therefrom.

## IV. CONCLUSION

Judgment shall enter in favor of Defendant Pickett and against Plaintiffs, dismissing all of Plaintiffs' claims with prejudice.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>October 10, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |